| STATE OF NORTH CAROLINA | | File No. 22-CVS- 1053 | |
|---|---|---|---|
| MECKLENBURG County | | In The General Court Of Justice<br>☐ District  ☒ Superior Court Division | |
| Name Of Plaintiff<br>Andrell Mackey, as Administratix of the Estate of Harold P. Easter | | **CIVIL SUMMONS**<br>☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE) | |
| Address<br>c/o James, McElroy & Diehl, P.A., 525 N. Tryon Street, Suite 700 | | | |
| City, State, Zip<br>Charlotte, NC 28202 | | | |
| VERSUS | | | G.S. 1A-1, Rules 3 and 4 |
| Name Of Defendant(s)<br>Sergeant Nicholas Vincent (individually and in his official capacity as a Sergeant of the Charlotte-Mecklenburg Police Department),<br>Officer Shon Sheffield, et al. | | Date Original Summons Issued | |
| | | Date(s) Subsequent Summons(es) Issued | |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1<br>Officer Shon Sheffield<br><br>1598 Tundra Ln.<br>Denver NC 28037 | Name And Address Of Defendant 2 |
|---|---|

⚠ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If none, Address Of Plaintiff)<br>J. ALEXANDER HEROY, ESQ.<br>JAMES, McELROY & DIEHL, P.A.<br>525 N. TRYON STREET, SUITE 700<br>CHARLOTTE NC 28202 | Date Issued<br>1·20·2022 | Time<br>3:45 ☐ AM ☒ PM |
|---|---|---|
| | Signature<br>Emily B | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF MECKLENBURG | FILED IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>22-CVS-1053<br><br>2022 JAN 20 P 3: 52<br><br>MECKLENBURG CO., C.S.C.<br><br>BY_____ |

ANDRELL MACKEY, as Administratrix of
the Estate of HAROLD P. EASTER,

      Plaintiff,

v.

SERGEANT NICHOLAS VINCENT
(individually and in his official capacity as a
Sergeant of the Charlotte-Mecklenburg Police
Department), OFFICER SHON SHEFFIELD
(individually and in his respective official
capacity as Officer of the Charlotte-Mecklenburg
Police Department), OFFICER BRENTLEY
VINSON (individually and in his respective
official capacity as Officer of the Charlotte-
Mecklenburg Police Department), OFFICER
MICHAEL S. BENFIELD (individually and in
his respective official capacity as Officer of the
Charlotte-Mecklenburg Police Department),
OFFICER MICHAEL R. JOSEPH (individually
and in his respective official capacity as Officer
of the Charlotte-Mecklenburg Police
Department), OFFICER JOHN DOE 1-5, and the
CITY OF CHARLOTTE,

      Defendants.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

      Plaintiff Andrell Mackey, as Administratrix of the Estate of Harold P. Easter ("Plaintiff"), complaining of Defendants Sergeant Nicholas Vincent and Officers Shon Sheffield, Brentley Vinson, Michael S. Benfield, and Michael R. Joseph, and Defendant City of Charlotte, alleges and says as follows:

**Parties, Jurisdiction, and Venue**

      1.    Plaintiff is an adult resident of Mecklenburg County, North Carolina. She is the surviving sister of the decedent, Harold P. Easter ("Mr. Easter"), and is the duly-appointed Administratrix for Mr. Easter's Estate.

1

2. At the time of Mr. Easter's death, he was a resident of Mecklenburg County, North Carolina.

3. Upon information and belief, Defendant Sergeant Nicholas Vincent ("Sergeant Vincent") is an adult resident of Mecklenburg County, North Carolina and suffers from no legal disability. Upon information and belief, Sergeant Vincent is a 12-year veteran of the Charlotte-Mecklenburg Police Department ("CMPD"), and at all times relevant to the allegations below was a sergeant with CMPD and an agent and employee of the Defendant City of Charlotte.

4. Upon information and belief, Defendant Officer Shon Sheffield ("Officer Sheffield") is an adult resident of Mecklenburg County, North Carolina and suffers from no legal disability. Upon information and belief, Officer Sheffield is a 7-year veteran of CMPD, and at all times relevant to the allegations below was a police officer with CMPD and an agent and employee of the Defendant City of Charlotte.

5. Upon information and belief, Defendant Officer Brentley Vinson ("Officer Vinson") is an adult resident of Mecklenburg County, North Carolina and suffers from no legal disability. Upon information and belief, Officer Vinson is a 5-year veteran of CMPD, and at all times relevant to the allegations below was a police officer with CMPD and an agent and employee of the Defendant City of Charlotte.

6. Upon information and belief, Defendant Officer Michael S. Benfield ("Officer Benfield") is an adult resident of Mecklenburg County, North Carolina and suffers from no legal disability. Upon information and belief, Officer Benfield is a 5-year veteran of CMPD, and at all times relevant to the allegations below was a police officer with CMPD and an agent and employee of the Defendant City of Charlotte.

7. Upon information and belief, Defendant Officer Michael R. Joseph ("Officer Joseph") is an adult resident of Mecklenburg County, North Carolina and suffers from no legal disability. Upon information and belief, Officer Joseph is a 2-year veteran of CMPD, and at all times relevant to the allegations below was a police officer with CMPD and an agent and employee of the Defendant City of Charlotte.

8. Upon information and belief, Officers John Doe 1-5 are adult residents and citizens of North Carolina and suffer from no legal disability. Upon information and belief, Officers John Doe 1-5 were aware of and participated, condoned or failed to come to Mr. Easter's aid. At all times relevant to the allegations below, Officers John Doe 1-5 were police officers with CMPD and an agent and employee of the Defendant City of Charlotte.

9. Sergeant Vincent and Officers Sheffield, Vinson, Benfield, Joseph, and John Doe 1-5 are sometimes collectively referred to below as the "CMPD Defendants."

10. Defendant City of Charlotte ("City") is a municipal corporation in Mecklenburg County, North Carolina, duly chartered under the laws of the State of North Carolina. Pursuant to the City's charter, it maintains and operates a police force called the Charlotte-Mecklenburg Police Department (CMPD). The City bears legal responsibility for acts and omissions of the

CMPD and its police officers that occur in the course of any officer's employment as a CMPD officer and agent of the City, including without limitation the acts and omissions of the CMPD Defendants, detailed below.

11. The City is not entitled to governmental immunity with respect to the claim raised below under 42 U.S.C. § 1983.

12. Upon information and belief, the City waived governmental immunity that might otherwise apply to the alternative negligence/gross negligence claim in this action. Upon information and belief, the City purchased insurance, either by contract with an insurance company or by participating in an insurance risk pool, that covers the claims raised in this action, and the City thereby waived any potential defense of sovereign or governmental immunity. Furthermore, upon information and belief, Defendants collectively waived sovereign immunity through the purchase of one or more policies of liability insurance pursuant to N.C. Gen. Stat. § 160A-485, the purchase of a bond pursuant to N.C. Gen. Stat. § 162-8, and/or by participating in a local government risk pool pursuant to N.C. Gen. Stat. § 58-23-5.

13. Further, the CMPD Defendants' negligent conduct, described above, occurred while they were employees of the City. As public employees sued in their individual capacity, they are not entitled to public official immunity. To the extent the CMPD Defendants are considered to be public officials, their conduct was outside the scope of their authority, and was done with malice and/or willful, wanton, or reckless disregard for the rights and safety of Easter.

14. This Court has jurisdiction over the parties and the subject matter of this action.

15. Venue is proper in Mecklenburg County because this is where the causes of action arose.

16. This is an action to recover money damages resulting from Defendants' failure to provide Mr. Easter with medical care when he was in obvious distress and further suffered a medical emergency in CMPD's custody, and what the Mecklenburg County District Attorney described as CMPD's "abject failure of operating procedure and general standards of custodial care." Mr. Easter subsequently died.

17. The amount in controversy exceeds $25,000.

### **Factual Allegations**

#### *The Traffic Stop and Mr. Easter's Arrest*

18. On January 23, 2020, Sergeant Vincent was employed by the City as a CMPD sergeant, and Officers Sheffield, Vinson, Benfield, Joseph, and John Doe 1-5 were each employed by the City as CMPD officers. Upon information and belief, Officers Sheffield, Vinson, Benfield, and Joseph were all under Sergeant Vincent's command within the CMPD Metro Division's Crime Reduction Unit ("CRU").

19. On January 23, 2020, Mr. Easter was driving his car near Greenville Park in Charlotte, North Carolina.

20. On that same day, around the time that Mr. Easter was driving his car near Greenville Park, Officer Sheffield was driving a marked CMPD cruiser in the same area. Officer Joseph was a passenger in the cruiser driven by Officer Sheffield.

21. Officer Sheffield observed Mr. Easter's car and pulled his marked CMPD cruiser behind Mr. Easter's car. Officer Sheffield activated the roof-mounted light bar of his cruiser to initiate a traffic stop and signal the operator of the car ahead of him (Mr. Easter) to pull over.

22. Mr. Easter pulled his car over and stopped at the side of the road near the intersection of Whisnant Street and Burton Street at approximately 11:28 a.m.

23. Officer Sheffield pulled his cruiser to a stop behind Mr. Easter's car. Before Officer Sheffield exited the cruiser and made personal contact with Mr. Easter, Officer Sheffield and/or Officer Joseph observed Mr. Easter eat an unknown quantity of a substance that was determined shortly thereafter to be cocaine. Recorded audio of the traffic stop captured one of the Officers saying, "He's eating it," referring to Mr. Easter. Officer Joseph told Officer Sheffield that "[Mr. Easter] was trying to eat it hard."

24. During the arrest of Mr. Easter, Mr. Easter ingested an unknown quantity of cocaine and/or crack cocaine in the presence of, at least, Officer Sheffield.

25. After handcuffing Mr. Easter, Officers Sheffield Joseph searched Mr. Easter and his car. The Officers reportedly found a small amount of marijuana and cocaine in the car.

26. When the Officers confronted Mr. Easter about the marijuana and suspected other narcotics, Mr. Easter informed the officers that he used drugs.

27. Officer Benfield, who arrived on-scene in a separate vehicle shortly after Mr. Easter was pulled over, then instructed Mr. Easter to open his mouth. Officer Benfield observed crack cocaine on Mr. Easter's tongue and said, "He was eating it." Officer Benfield also informed Officer Joseph that "[Mr. Easter has] crack all over his tongue.

28. Officer Vinson also reported that Mr. Easter ingested crack cocaine, including by stating to Officer Sheffield that "[Mr. Easter] ate whatever he had." Officer Sheffield responded, "No he didn't get all of it. I mean when I was fighting him, he was crushing part of it. Probably got an 8-ball right there."

29. During the arrest, Officer Joseph observed cocaine outside of Mr. Easter's lip.

30. Mr. Easter requested a drink of water from the Officers, and stated "I'm dehydrated officer." Officer Joseph replied, You've got cocaine on your tongue. It's going to happen when you try to eat cocaine.."

31. The Officers took Mr. Easter into custody, and placed him in the back seat of Officer Sheffield's cruiser.

32. In the cruiser, Mr. Easter asked Officers Sheffield and Joseph, "Officer, can I get some air?" and "Officer, can I get hydrated?" In response to Mr. Easter's requests for air and water, one of the Officers simply replied, "That happens when you try to eat cocaine." Neither Officer opened a window to give Mr. Easter additional air, nor did they offer Mr. Easter any water.

33. While in the cruiser, Mr. Easter told Sgt. Vincent that he had tried to swallow a little bit of cocaine. Sgt. Vincent told Officer Vinson what Mr. Easter said.

34. Despite having knowledge that Mr. Easter ingested, or very likely ingested, an unknown quantity of drugs, and was beginning to suffer the impacts, none of the CMPD officers called for a medical evaluation of Mr. Easter or sought medical attention for him.

35. CMPD Policies required that Mr. Easter be immediately provided medical attention.

36. Mr. Easter continued to request water throughout the car ride to the CMPD Metro Division substation, located at 1181 Beatties Ford Rd, Charlotte, North Carolina (the "Station"). At no point during the ride did Officer Sheffield or Officer Joseph offer Mr. Easter any water, ask him about his physical condition, or provide medical aid of any kind.

37. During the car ride to the Station, Mr. Easter repeatedly asked Officers Sheffield and Joseph for more air, stating that he couldn't breathe. One of the Officers replied that if Mr. Easter 'could talk, then he could breathe'. Mr. Easter also repeatedly asked the Officers for water, to talk to their sergeant, and to go to the bathroom.

38. Mr. Easter also exhibited certain erratic behavior, such as singing, yelling, and constant talking while in the back seat of the cruiser.

39. At all relevant times, Mr. Easter, while erratic, was respectful of the CMPD officers and took no action that would signal that he was a danger to any officer.

40. Mr. Easter, likewise, obeyed all commands given to him by the CMPD officers.

41. Upon information and belief, Mr. Easter's repeated requests for air and water, as well as his erratic behavior, were symptomatic of a medical emergency, and particularly related to the increasing influence of the unknown quantity of cocaine coursing through his body.

42. Mr. Easter was in obvious medical distress while in the back seat of the CMPD cruiser.

## Mr. Easter's Medical Emergency and Untimely Death

43. Upon arriving at the Station approximately 50 minutes after first spotting Mr. Easter's vehicle, Mr. Easter continued to request water and told CMPD personnel that he had swallowed something. CMPD personnel attempted to look inside Mr. Easter's mouth, but because he would not stop moving, CMPD personnel refused to give him any water. CMPD strip searched Mr. Easter, but refused to provide any aid or even water.

44. At approximately 12:19 p.m., Officers Sheffield and Joseph took Mr. Easter to an interrogation room, where his legs were shackled to the floor.

45. Officer Vinson was the arresting officer and the case officer, and therefore in charge of and responsible for Mr. Easter's custody under CMPD policies.

46. Mr. Easter was left alone, however, for approximately one hour in the interrogation room. CMPD personnel did not monitor Mr. Easter while he was alone and restrained in the interrogation room, despite the clear danger Mr. Easter was in and the ongoing medical emergency he was sustaining.[1]

47. At the time of Mr. Easter's arrest, the CMPD Metro Division CRU office did not have video monitors that allowed them to view interview rooms, including the interview in which they placed Mr. Easter.

48. Mr. Easter stated, and then yelled, to the empty room that he had swallowed something, he was hot, he needed water, and he urgently needed to go to the bathroom. Mr. Easter stated that he supported his family and talked about a fireworks show for his children and the neighborhood children.

49. Mr. Easter's state declined further while he was shackled to the floor, alone in the interrogation room, and he exhibited clear signs that he was in urgent need of medical attention.

50. Had any Defendant, or any agent of Defendant, heard or seen Mr. Easter's behavior while he was shackled to the floor in the interrogation room, it would have or should have been readily apparent that Mr. Easter needed emergency medical attention.

---

[1] CMPD policy at the time of Mr. Easter's arrest provided, "unless that officer is relieved by another sworn CMPD officer or custody is transferred to another law enforcement officer or agency," that "[o]fficers are responsible for the safety and security of individuals in the officer's custody and control and will not leave an individual for any reason," and "[i]ndividuals who are under arrest will remain within the view and control of the responsible arresting officer at all times." CMPD policy at that time further provided that if an individual was kept in an interview room, they must be checked on at least every fifteen minutes, but that if an arrestee "is under the influence of drugs . . . the arrestee will not be left alone."

51. Upon information and belief, numerous CMPD officers, including Officers John Doe 1-5, heard Mr. Easter yelling incessantly and incoherently from inside the interrogation room, yet did nothing.

52. The only response during Mr. Easter's manic episode was when Officer Vinson entered the interrogation room after approximately 30 minutes and gave Mr. Easter a small plastic cup of water, which Mr. Easter quickly drank. Officer Vinson then quickly left the room. Mr. Easter then remained alone in the interrogation room for approximately another 20 minutes before anyone checked on him, despite screams by Mr. Easter for help.

53. While Mr. Easter was alone in the interrogation room, he experienced a full-body seizure and convulsed on the table for several minutes. He coughed and/or vomited blood onto the floor, exhibited slurred speech, and appeared to be in extreme distress.

54. At this point, no CMPD personnel entered the interrogation room to render aid to Mr. Easter. Upon information and belief, no CMPD personnel contacted emergency medical services to render aid to Mr. Easter.

55. Mr. Easter stated, to the empty interrogation room, that he was going to die and that he was already dying. Mr. Easter then alternated between singing, yelling, and crying as he clawed at the table before eventually going limp. Mr. Easter then fell off the table and onto the floor of the interrogation room, where he experienced another major seizure.

56. Mr. Easter remained on the floor and exhibited heavy, labored breathing in between a series of smaller convulsions.

57. Had any officer monitored Mr. Easter in-person or via video feed, his medical distress and the need for emergency medical attention would have been immediately apparent. However, he was not continually monitored by any CMPD officer.

58. For approximately eight (8) to ten (10) minutes after Mr. Easter fell off the table, he lay convulsing on the floor of the interrogation room, alone. Only after those eight to ten minutes did CMPD personnel entered the room, call out for a medic, and for the administration of Narcan.

59. Upon information and belief, CMPD personnel then administered two (2) doses of Narcan to Mr. Easter, attempting to counteract the effects of the cocaine in Mr. Easter's system. Mr. Easter nevertheless continued convulsing violently, with blood bubbling out of his nose, as one member of CMPD personnel said, "let him ride it out."

60. CMPD personnel attempted to monitor Mr. Easter's vital signs, and at one point could no longer detect a pulse. CMPD personnel then performed CPR and temporarily revived Mr. Easter, who gasped for breath while fluid streamed out of his mouth. Mr. Easter's pulse remained erratic, and CMPD personnel continued performing CPR and used a defibrillator to try and revive him.

61. Emergency medical services arrived at the Station at approximately 1:21 p.m. and transported Mr. Easter via ambulance from the Station to Novant Presbyterian Medical Center, located at 200 Hawthorne Lane, Charlotte, North Carolina ("Hospital"). Upon information and belief, Mr. Easter was unresponsive when EMS arrived at the Station, and he suffered cardiac arrest prior to and/or while he was being transported to the Hospital.

62. At the Hospital, Mr. Easter was placed on life support but never regained consciousness. He died at the age of 41.

63. Mr. Easter's Certificate of Death (Certificate No. 2020000539) stated that he died on January 26, 2020, three (3) days after the traffic stop. The Certificate listed both the immediate cause of Mr. Easter's death and the manner of his death as "pending," and indicated that the case had been referred to the medical examiner. However, the Certificate specified Mr. Easter's injury as "drug ingestion."

64. In conjunction with the performance of an autopsy on Mr. Easter's body, a postmortem sample of Mr. Easter's blood was examined by the Office of the Chief Medical Examiner in Raleigh, North Carolina. The Medical Examiner's Toxicology Report (Case Folder F202000103; Toxicology Folder T202000906) confirmed the existence of cocaine and cocaine metabolites in Mr. Easter's blood.

## **FIRST CLAIM FOR RELIEF**
**Wrongful Death of Harold P. Easter**

65. Plaintiff repeats and realleges the factual allegations set forth throughout this Complaint.

66. Defendants' acts and omissions, detailed above, were a direct and proximate cause of the injuries sustained by Mr. Easter while he was in CMPD's custody and that subsequently led to his wrongful death.

67. As a direct and proximate result of Mr. Easter's wrongful death, his heirs have been deprived of the net economic value of his earnings for the remainder of his life expectancy, as well as his protection, care, assistance, society, companionship, comfort, guidance, effects, offices, and services.

68. The CMPD Defendants are liable in their respective individual capacities, and are liable as employees of the City. The CMPD Defendants' actions and inactions detailed above are imputed to the City under agency principles, vicarious liability, and/or the doctrine of *respondeat superior*.

69. Plaintiff is entitled to recover, in her capacity as the Administratrix for Mr. Easter's Estate, all such damages set forth in N.C. Gen. Stat. § 28A-18-2 for Mr. Easter's wrongful death, in an amount exceeding $25,000 to be determined at trial, and for which Defendants are jointly and severally liable.

## SECOND CLAIM FOR RELIEF
### Negligence/Gross Negligence – All Defendants

70. Plaintiff repeats and realleges the factual allegations set forth throughout this Complaint.

71. At all times while Mr. Easter was in CMPD's custody, the City and the CMPD Defendants owed a duty of reasonable care to Mr. Easter.

72. The CMPD Defendants' actions and inactions detailed above are imputed to the City under agency principles, vicarious liability, and/or the doctrine of *respondeat superior*.

73. The CMPD Defendants acknowledged on multiple occasions that Mr. Easter had ingested an unknown quantity of cocaine, but yet they failed to, at a bare minimum, take reasonable steps to determine (or have a medical professional determine) how much cocaine Mr. Easter had ingested, and they failed to continuously monitor his condition while he was chained to the floor of the interrogation room.

74. The City and the CMPD Defendants breached their legal duties to Mr. Easter while he was in CMPD's custody, and Defendants were negligent/grossly negligent in at least the following ways:

   a. Officers Sheffield, Joseph, and Benfield failed to immediately summon proper medical care for Mr. Easter despite observing, and then confirming during the traffic stop, that Mr. Easter had ingested an unknown quantity of cocaine;

   b. Alternatively, Officers Sheffield, Joseph, and Benfield failed to transport Mr. Easter to an emergency medical facility so that he could receive proper medical attention before they transported him to the Station;

   c. Officers Sheffield, Joseph, and Benfield failed to notify their immediate supervisor(s), including without limitation Sergeant Vincent, that Mr. Easter had ingested an unknown quantity of cocaine;

   d. The CMPD Defendants failed to immediately summon proper medical care at the Station when Mr. Easter, who had been arrested (in part) on drug charges, stated that he had swallowed something and he repeatedly requested water;

   e. The CMPD Defendants violated numerous CMPD Policies and Directives regarding the treatment and care that should have been provided to Mr. Easter;

   f. The CMPD Defendants failed to continuously monitor Mr. Easter at the Station, whether in person or via live video feed, for possible signs of

| | distress while he was restrained in the interrogation room and was under the effects of an unknown quantity of cocaine; |
|---|---|
| g. | The CMPD Defendants failed to identify Mr. Easter's state of extreme physical and mental distress despite clear signs that he was experiencing increasingly deleterious effects from ingesting an unknown quantity of cocaine – e.g., Mr. Easter sang while handcuffed in the back of the cruiser; he requested air and reported an inability to breathe properly; he reported being hot; he repeatedly requested water; and he made rambling statements to the thin air about guardian angels and fireworks; |
| h. | The CMPD Defendants failed to recognize Mr. Easter's heightened susceptibility to asphyxiation because he ingested an unknown quantity of cocaine; |
| i. | The CMPD Defendants failed to recognize Mr. Easter's heightened susceptibility to excited delirium because he ingested an unknown quantity of cocaine; |
| j. | The CMPD Defendants failed to recognize the possibility that Mr. Easter could die without proper medical care because he ingested an unknown quantity of cocaine; |
| | The CMPD Defendants failed to properly monitor Mr. Easter or provide adequate and necessary medical care after finding Mr. Easter experiencing a seizure in the interrogation room; |
| k. | The City failed to implement adequate policies and procedures with respect to proper methods for evaluating and addressing the health and condition of a person in CMPD's custody who had ingested and unknown quantity of narcotics; |
| l. | The City's policy and procedure at the time was to not continuously monitor pre-trial detainees in interrogation rooms, despite the known, foreseeable risks of medical emergencies and/or harm to such detainees; |
| m. | The City failed to adequately train and instruct its officers, including without limitation the CMPD Defendants, with respect to proper methods for evaluating and addressing the health and condition of a person in CMPD's custody who had ingested and unknown quantity of narcotics; |
| n. | The City failed to adequately train and instruct its officers, including without limitation the CMPD Defendants, with respect to proper monitoring of pre-trial detainees in interrogation rooms; |
| o. | Defendants were careless and negligent in such other ways as may be identified during the course of discovery and/or trial. |

75. Defendants' actions and omissions, detailed above, amounted to a conscious and intentional disregard for, and were indifferent to, Mr. Easter's rights and safety while he was in CMPD's custody.

76. Defendants' acts and omissions were willful, wanton, and/or reckless, and constituted gross negligence.

77. Defendants' acts and omissions were a direct and proximate cause of Mr. Easter's injuries while in CMPD's custody, and his subsequent death.

78. The CMPD Defendants are liable in their respective individual capacities, and are liable as employees of the City. The CMPD Defendants' actions and inactions detailed above are imputed to the City under agency principles, vicarious liability, and/or the doctrine of *respondeat superior*.

79. Plaintiff is entitled to recover, in her capacity as the Administratrix for Mr. Easter's Estate, all such damages set forth in N.C. Gen. Stat. § 28A-18-2 for Defendants' gross negligence, in an amount exceeding $25,000 to be determined at trial, and for which Defendants are jointly and severally liable.

### THIRD CLAIM FOR RELIEF
**Punitive Damages – All Defendants**

80. Plaintiff repeats and realleges the factual allegations set forth throughout this Complaint.

81. Defendants' actions, detailed above, constitute callous and deliberate indifference to Mr. Easter's Constitutional due process rights under the Fourteenth Amendment, which justify an award of punitive damaged under 42 U.S.C. § 1983.

82. Defendants' actions, detailed above, further constitute willful and wanton conduct under N.C. Gen. Stat. §1D-1, *et seq.*, and are imputed to the City under agency principles, vicarious liability, and/or the doctrine of *respondeat superior*.

83. Plaintiff is entitled to recover, in her capacity as the Administratrix for Mr. Easter's Estate, all such damages set forth in N.C. Gen. Stat. §§ 1D-1 and 28A-18-2 for Defendants' above-described conduct, and for which Defendants are jointly and severally liable.

### FOURTH CLAIM FOR RELIEF
**Violations of 42 U.S.C. § 1983 – All Defendants**

84. Plaintiff repeats and realleges the factual allegations set forth in the preceding paragraphs.

85. As detailed above, the CMPD Defendants wrongfully deprived Mr. Easter of potentially life-saving medical care that may have counteracted the narcotic overdose that he suffered while in CMPD's custody.

86. The CMPD Defendants knew or should have known that Mr. Easter had ingested illicit contraband, as evidenced by their recorded statements to Mr. Easter and each other, and the immediate administration of Narcan upon discovering Mr. Easter in medical distress in the interview room.

87. The CMPD Defendants knew of but were deliberately indifferent to Mr. Easter's serious medical needs, in that in the process of arresting him they witnessed him swallow illicit contraband which they almost immediately confirmed to be cocaine, observed Mr. Easter's behavior become increasingly erratic even as he asked for water and said he could not breath, but nonetheless, and despite knowing the substantial risk of medical harm or death to Mr. Easter as a result of ingesting and potentially overdosing on cocaine, completely disregarded that risk by failing to provide or request any medical treatment for Mr. Easter or to even monitor his condition while he remained alone in an interrogation room. Instead, CMPD either handcuffed or shackled him, denied him water, and left him alone to die.

88. Moreover, the CMPD Defendants' conduct was in direct violation of CMPD policy directly addressing the known, substantial risk of harm to detainees experiencing a medical emergency due to the consumption of drugs or other substances.

89. Upon information and belief, the City's policy and procedure at the time was that if a CMPD officer had reason to believe that an individual taken into CMPD custody had ingested an illegal substance or contraband, including without limitation narcotics, the officer was required to:

   a. Immediately contact emergency medical services and transport the individual to a medical facility before processing the arrest or transporting the individual to lock-up or to jail;

   b. Immediately notify that officer's direct supervisor that the individual in CMPD custody had ingested contraband; and

   c. If an arrest was appropriate, complete the arrest process after the individual was released from the medical facility.

90. In contravention of this policy, the CMPD Defendants failed to contact emergency medical services and transported Mr. Easter directly to the police station rather than a medical facility. Upon information and belief, the CMPD Defendants further failed to notify their direct supervisor that Mr. Easter had ingested contraband.

91. Mr. Easter was helpless while restrained in CMPD's custody, and exhibited numerous signs of escalating distress after he ingested an unknown quantity of cocaine, including without limitation his statements that he was hot, he needed air and could not breathe, and he needed water. The CMPD Defendants acknowledged on multiple occasions that Mr.

Easter had ingested an unknown quantity of cocaine, but yet they failed to, at a bare minimum, take reasonable steps to determine (or have a medical professional determine) how much cocaine Mr. Easter had ingested, and they failed to continuously monitor his condition while he was chained to the floor of the interrogation room.

92. The CMPD Defendants' conduct towards Mr. Easter was willful and wanton in that they consciously and intentionally disregarded, and were deliberately indifferent to, Mr. Easter's rights and safety, the result of which Defendants knew was reasonably likely to be severe physical injury or – as was the case here – death.

93. The CMPD Defendants' conduct violated Mr. Easter's constitutional rights under 42 U.S.C. § 1983.

94. Upon information and belief, the City also had a policy and procedure at the time that officers were not required to continuously monitor pre-trial detainees in interrogation rooms – even those who were confirmed to have, or suspected of having, ingested narcotics – despite the known risks of medical emergencies and/or harm to such detainees.

95. Upon information and belief, the City also failed to provide all officers with the ability to remotely monitor detainees inside interview rooms through video monitors or other live feeds.

96. The City also failed to adequately train and instruct its officers, including without limitation the CMPD Defendants, with respect to proper methods for evaluating and addressing the health and condition of a person in CMPD's custody who had ingested an unknown quantity of narcotics.

97. The City further failed to adequately train and instruct its officers, including without limitation the CMPD Defendants, with respect to the proper monitoring of pre-trial detainees in interrogation rooms.

98. As a direct and proximate result of Defendants' actions and inactions, Mr. Easter was forced to endure extreme pain and suffering, and the deprivation of rights guaranteed by the Constitution of the United States of America.

99. Among other violations, Defendants' conduct violated Mr. Easter's substantive due process rights under the Fourteenth Amendment, as a pre-trial detainee who had not been adjudicated guilty of any crime, to be free from punishment – including the deprivation of necessary medical care.

100. The CMPD Defendants are liable in their respective individual and official capacities, and are liable as employees of the City. The CMPD Defendants' actions and inactions detailed above are imputed to the City under agency principles, vicarious liability, and/or the doctrine of *respondeat superior*.

101. The City is further liable on the basis of its failure to establish and implement a policy requiring proper monitoring of pre-trial detainees in interrogation rooms, and its failure to

properly train and instruct the CMPD Defendants with respect to both existing policies regarding necessary medical attention for detainees who ingested contraband and the need to monitor detainees in interrogation rooms.

102. Moreover, Mr. Easter's overdose was a sadly predictable result of the City's failure to implement a policy and procedure requiring proper monitoring of pretrial detainees, and concurrent failure to train its officers in proper monitoring, particularly in situations where the detainee was known to have ingested contraband.

103. Plaintiff is entitled to recover, in her capacity as the Administratrix for Mr. Easter's Estate, damages for Defendants' violations of Mr. Easter's constitutional rights in an amount exceeding $25,000 to be determined at trial, and for which Defendants are jointly and severally liable.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Andrell Mackey, as Administratrix of the Estate of Harold P. Easter, respectfully prays the Court for the following relief:

1. That the Court enter judgment in Plaintiff's favor on her claim against Defendants, jointly and severally, for Mr. Easter's wrongful death, negligence and gross negligence, and violations of Mr. Easter's constitutional rights under 42 U.S.C. §1983, and award Plaintiff damages in an amount to be proven at trial but in excess of $25,000, plus interest;

2. That the Court award Plaintiff punitive damages against Defendants, jointly and severally, for their willful and wanton conduct, pursuant to N.C. Gen. Stat. §§ 1D-1, *et seq.*;

3. That the Court award Plaintiff her attorneys' fees, to the extent permitted by law;

4. That the Court tax the costs of this action against Defendants, jointly and severally;

5. For a trial by jury on all issues so triable; and

6. That the Court grant Plaintiff such other relief that the Court deems just and equitable under the circumstances.

This the 20th day of January, 2022.

                **JAMES, McELROY & DIEHL, P.A.**

                */s/ Jennifer Houti*
                J. Alexander Heroy, NC Bar No. 39752
                Jennifer M. Houti, NC Bar No. 45442
                525 N. Tryon Street, Suite 700
                Charlotte, North Carolina 28202
                Telephone: (704) 372-9870
                Facsimile: (704) 350-9332
                E-mail: aheroy@jmdlaw.com
                          jhouti@jmdlaw.com
                *Attorneys for Plaintiff*